**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JEAN B. St. FLEUR,

      Plaintiff,

-vs-                                       Case No.  8:03-CV-824-T-30TGW

ARCHIE BRIGHTS, et al.,

      Defendants.

_____/

## ORDER

Plaintiff, an inmate in a Florida penal institution proceeding *pro se*, initiated this matter by filing a civil rights complaint seeking relief pursuant to 42 U.S.C. § §1983 (Dkt. 1).  Currently before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint (Dkt. 35) and Plaintiff's reply in opposition to the motion.  Having considered the complaint and exhibits attached to the request to proceed *in forma pauperis*, Defendant's motion to dismiss, Plaintiff's reply, applicable statutes, and controlling case law, the Court finds that, for reasons discussed below, that Defendant's motion should be granted.

### Plaintiff's Statement of Facts[1]

Plaintiff names Florida Department of Corrections ("FDOC") personnel Archie Bright, Regional Chaplain, and   Richard E. Hagerman, Institutional Chaplain, Zephyrhills Correctional Institution ("ZCI"), and James McDonough, Secretary, FDOC, as defendants.

_____

[1]As the facts are to be construed in the light most favorable to the non-moving party when reviewing a motion to dismiss, the Court adopts, solely for the sake of this motion, the version of material facts as alleged by Plaintiff, the non-moving party. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

On October 23, 2006, Defendant Hagerman was dismissed for failure to effect service (Dkt. 30). *See* Fed. R. Civ. P. 4(m) (2006).

The crux of Plaintiff's complaint is that Defendants precluded him from participating as a member of the Trinity Band, a religious group that performs at ZCI's Christian services, because he is a Muslim, in violation of the First Amendment, the Religious Freedom Restoration Act of 1993 §§2 and 3, 42 U.S.C.A. §§2000bb, 2000bb-1,[2] and Fla. Admin. C. 33-503.001(2)(c) and (10).[3]

The Trinity Band is composed of a mixture of Christians, Rastafarians, Hebrew Israelites, and non-believers. Plaintiff was given permission by Chaplains Bright and Hagerman to join the Trinity Band in worship (Dkt. 1 at 8-9).

Although he was initially accepted into the band, when Chaplain Hagerman learned that Plaintiff is Muslim, he was excluded from participating in band activities. *Id.* at 9. Plaintiff was informed that the band's equipment was donated by "a Christian lady" who wanted the use of the equipment restricted to those of like faith. *Id.* Plaintiff argued that the

---

[2]Plaintiff erroneously cites 42 U.S.C. §2000bb, et seq., in support of his complaint. In *City of Boerne v. Flores*, 521 U.S. 507 (1997), the Supreme Court ruled that the religious protections mandated by the Religious Freedom Restoration Act of 1993 exceeded Congress' remedial power under section 5 of the Fourteenth Amendment. *Id.* at 532-36. Congress enacted the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), codified at 42 U.S.C. §2000cc, in the wake of the *Boerne* decision. Section 2000cc provides, in pertinent part that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." 42 U.S.C. §2000cc. Thus, the RLUIPA protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion. As the Supreme Court pointed out in *Cutter v. Wilkinson*, however, the RLUIPA "does not elevate accommodation of religious observances over an institution's need to maintain order and safety." 544 U.S. 709, 710 (2005).

[3]Outlining the FDOC's chaplaincy services, Fla. Admin. C. 33-503.001 sets forth the organization and functions of the chaplaincy, FDOC policy, and guidelines for religious services and rituals within FDOC facilities. Specifically, Fla. Admin. C. 33-503.001(2)(c) provides, in pertinent part, that "[t]here shall be no discrimination for or against an inmate based on his religious beliefs or practices," and Fla. Admin. C. 33-503.001(10) provides that "[a]ctivities should be scheduled to allow each inmate an opportunity to participate in religious programs and activities of his choice consistent with the security, order and effective management of the institution."

instruments became State property once they were transferred to the FDOC, and as such, they were available for use by any prisoner without regard to religion. *Id.* His argument was unsuccessful.

Attached to the request to proceed *in forma pauperis* are: (1) the Affidavit of David Street, a member of the Trinity Band's choir, averring that he is an Hebrew Israelite, and (2) an Informal Grievance in which Plaintiff alleged that "at least one homosexual and two Rastafarians" were allowed to participate in band activities. Without identifying the parties to the conversation, Plaintiff states that someone employed at the ZCI contacted personnel at the Charlotte Correctional Institution ("CCI") by telephone regarding his assertion that he was allowed to participate in Christian activities while housed at the CCI.  A CCI staff member informed the caller that before his transfer to ZCI, Plaintiff was allowed to play instruments with the Christian band at CCI, where he also led a reggae band and produced shows regularly (Dkt. 1 at 9).

Plaintiff's request that Muslims be allowed to worship with music in the presence of their families, as allowed for other religious groups at ZCI, including many Islamic sects, was denied. *Id.* Plaintiff contends that Defendants' actions are the product of a pattern and practice of discrimination. *Id.* Plaintiff further contends that in retaliation for this action being filed, Defendants removed his name from the "call out" list.[4] *Id.* Because placement on the "call out" list is required for a prisoner to be excused from his assignment to attend Islamic services, the removal of his name from the call-out list substantially burdened Plaintiff's exercise of religion. *Id.* at 10.

Plaintiff seeks monetary and injunctive relief.  *Id.*

---

[4]Notably, the grievance regarding the removal of Plaintiff's name from the call out list was filed on March 31, 2003, *see* Dkt. 2, Attach. (unnumbered), and the instant complaint was not filed until April 30, 2003.

### Standard of Review

To warrant dismissal of a complaint under Fed. R. Civ. P. 12(b)(6), it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" in the complaint. *Hishon v. King & Spalding,* 467 U.S. at 73. In considering a motion to dismiss, courts generally accept all factual allegations in the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the non-movant. *See Miccosukee Tribe of Indians of Florida v. Florida State Athletic Commission*, 226 F. 3d 1226, 1234 (11th Cir. 2000). "Unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the complaint should not be dismissed on grounds that it fails to state a claim upon which relief may be granted. *Sea Vessel, Inc. v. Reyes,* 23 F.3d 345, 347 (11th Cir. 1994).

To survive a motion to dismiss, a plaintiff must, however, do more than merely "label" his claims. *Blumel v. Mylander,* 919 F.Supp. 423, 425 (M.D.Fla. 1996). Conclusory allegations and unsupported conclusions of fact are not sufficient to withstand a dismissal under Rule 12(b)(6). *Jackson* v. *Bellsouth Telecomms.,* 372 F.3d 1250, 1262-63 (11th Cir. 2004). Even under Fed. R. Civ. P. 8(a)'s notice pleading provision and the liberal interpretation given to *pro se* pleadings, a complaint must include allegations respecting all material elements of all claims asserted; bare legal conclusions attached to narrative facts will not suffice.

"[I]n the case of *pro se* litigants, . . leniency does not give a court license to serve as *de facto* counsel for a party, . . or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998). Dismissal of the complaint is appropriate when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of

action. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir. 1993).

### Discussion

Defendants move to dismiss the complaint on grounds, *inter alia*, that the complaint fails to state a claim for which relief can be granted because Plaintiff did not exhaust the administrative remedies available to him before filing suit.  *See* 42 U.S.C. § 1997e(a); *Jones v. Bock*, __ U.S. __, 127 S.Ct. 910, 921 (Jan. 22, 2007) (failure to exhaust is an affirmative defense under the  Prison Litigation Reform Act (hereinafter "PLRA") and grounds for dismissal for failure to state a claim).

On April 26, 1996, the President signed into law the PLRA, amending The Civil Rights of Institutionalized Persons Act, 42 U.S.C. § §1997e, which sets forth certain threshold requirements that must be satisfied before a prisoner can bring a § 1983 claim. Defendants assert, *inter alia*, that because Plaintiff alleges that they engaged in conduct which violated §1983, the initial inquiry must focus on the language of 42 U.S.C. § § 1997e(a), which was amended to read as follows:

> (a)   Applicability of Administrative Remedies. No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § §1997e(a); Prison Litigation Reform Act of 1995, Title VIII, Section 803(d), Suits by Prisoners. This provision applies in the present case because Plaintiff filed his complaint after the PLRA's effective date. *See Booth v. C.O. Churner*, 532 U.S. 731, 736 (2001)*;  Harper v. Jenkin,* 179 F.3d 1311, 1312 (11th Cir. 1999);  *Alexander v. Hawk*, 159 F.3d 1321, 1324 (11th Cir. 1998).

"[T]here is no longer discretion to waive the exhaustion requirement." *Alexander*, 159 F.3d at 1325 (11th Cir. 1998). *See also Booth*, 532 U.S. at 741 (finding that Congress has mandated exhaustion of administrative remedies, regardless of the relief offered through the administrative procedures). Section 1997e(a) does not say that exhaustion of administrative remedies is required before a case may be <u>decided</u>. It says that "[n]o action shall be <u>brought</u> with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § § 1997e(a) (2005) (emphasis added). The Supreme Court held in *Booth* that exhaustion, <u>including appeal</u> of an unfavorable decision on the inmate's initial grievance, is required even where the State's administrative process could not award him the monetary relief he sought. *See Booth*, 532 U.S. at 736.

Addressing the exhaustion requirement in *Woodford v. Ngo*, the Supreme Court recently held that:

> Congress enacted the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended, 42 U.S.C. § § 1997e *et seq.,* in 1996 in the wake of a sharp rise in prisoner litigation in the federal courts, see, *e.g., Alexander v. Hawk,* 159 F.3d 1321, 1324-1325 (C.A.11 1998) (citing statistics). The PLRA contains a variety of provisions designed to bring this litigation under control. See, *e.g.,* § 1997e(c) (requiring district courts to weed out prisoner claims that clearly lack merit); § 1997e(e) (prohibiting claims for emotional injury without prior showing of physical injury); § 1997e(d) (restricting attorney's fees).
>
> A centerpiece of the PLRA's effort "to reduce the quantity ... of prisoner suits" is an "invigorated" exhaustion provision, § 1997e(a). *Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). . . . The PLRA strengthened this exhaustion provision in several ways. Exhaustion is no longer left to the discretion of the district court, but is mandatory. See *Booth v. Churner,* 532 U.S. 731, 739, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Prisoners must now exhaust all "available" remedies, not just those that meet federal standards. Indeed, as we held in *Booth,* a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process. *Id.,* at 734, 121 S.Ct. 1819. Finally, exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983. *Nussle, supra,* at 524, 122 S.Ct. 983.

__ U.S. __, 126 S.Ct. 2378, 2382-83 (June 22, 2006).

If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. *Jones v.* Bock, __ U.S. __, 127 S.Ct. at 923; Johnson *v. Meadows,* 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, __ U.S. __, 126 S.Ct. 2978 (2006). Consequently, in order to exhaust all available administrative remedies, an inmate must pursue an administrative appeal if his grievance is denied. *Moore v. Smith,* 18 F.Supp.2d 1360, 1362 (N.D. Ga. 1998).

The Florida Department of Corrections provides a three-step grievance procedure. First, an inmate must file an informal grievance. *See* Fla. Admin. C. 33-103.005. If the issue is not resolved, the inmate must then file a formal grievance at the institutional level. *See* Chapter 33-103.006, F.A.C. If the matter is not resolved at the institutional level, the inmate must file an appeal to the Office of the Secretary, FDOC. *See* Fla. Admin C. 33-103.007. Thus, this Court must determine whether Plaintiff presented sufficient relevant information with respect to each of his claims in an informal grievance, a formal grievance, and an appeal to the Office of the Secretary of the Florida Department of Corrections.

With his complaint, Plaintiff filed copies of one Informal Grievance, three formal grievances and one grievance appeal (Dkt. 2, Attach (unnumbered)). A review of these grievances reveals that Plaintiff did not properly and fully exhaust any of his claims.[5] In the informal grievance Plaintiff filed on March 6, 2003, Plaintiff complained that he was "told by both Chaplains that due to [his] Islamic belief [he] could not participate in any of the

---

[5] Plaintiff has provided copies of the grievances he submitted regarding the subject matter of his complaint. *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

Chapel's music program and that Muslims cannot and will not have any music programs as does the Christians" (Dkt. 1, Attach. (unnumbered)).[6] The rules governing the FDOC's grievance procedures provide that "[w]ithin 10 calendar days following receipt of an informal grievance by the staff member, a written response shall be provided to the inmate." The response to the grievance, dated March 10, 2003, states that the grievance was denied "[b]ecause of the differences between Christianity and Islam, coupled with the fact that all of the members of the choir are professing Christians playing for Christian services.  Your being a part of the group poses a problem." *Id.*

On March 14, 2003, Plaintiff filed a "discrimination grievance" with the warden asserting that Chaplain Bright violated FDOC procedural rules and federal and state statutes in refusing to allow him to participate in Christian worship services (Dkt. 1, Attach. (unnumbered)).[7] The response, dated March 19, 2003, states: "[s]ince the chapel choir is composed of Christians ministering to persons of like faith, it is not inconsistent to have in

---

[6]"I am writing to grieve a discrimination issue; on March 6, 2003 I was told by both chaplains that due to my Islamic belief I could not participate in any of the Chapel's music program and that Muslims cannot and will not have any music programs as does [sic] the Christians.  For the past four (4) years (nearly) I only had one D.R., and both agreed that I have a nice personality but they claimed that my belief in Islam was the problem.  However, I have proof to show (at the appropriate time) that there are at least one homosexual and two Rastafarins [sic] in the same "Christian music group" that I was told that I could not be part of because of my belief.  Does that mean a homosexual and Rastafarins [sic] are preferred over Muslims?  I request relief from this terrible injustice; all relief allowed by law and not limited to. [sic] Thank you for your attention. I'm looking forward to your reply." Dkt. 2, Attach. (unnumbered), Informal Grievance dated March 6, 2003, submitted to the Warden.

[7]"I reaffirm and reallege each and every allegations contained in the attached informal grievance, pursuant to F.A.C. Rules 33-503.001(2)(c); 33-503.001(10); and all state and federal laws on discrimination as if fully set forth herein.  Moreover, F.A.C. Rule 33-503.001 quotes, "There **shall** [mandatory language] be no discrimination for or against an inmate based on his religious belief;" unquote.  In the chaplain's own words [Attached], he purported that my belief in Islam is the sole reason for his violation of the above rules and laws. Further, respondent failed to respond to his denying Muslims the same activities that are participated [sic] by other religious and non-religious inmates. I seek all administrative relief allowed by law." Dkt. 2, Attach. (unnumbered), Discrimination Grievance dated March 14, 2003, submitted to the Warden (emphasis in original).

this group persons who [are] all Christians.  Grievance denied." *Id.*  Plaintiff did not appeal the denial of this grievance.

Complaining that the Chaplain removed his name from the call-out list for Friday services in retaliation for the March 6, 2003 grievance, Plaintiff bypassed the informal grievance procedure and filed a formal grievance with the Warden on March 31, 2006.[8]  In his formal grievance, Plaintiff asserted that he was entitled to bypass the informal grievance process because "the Chaplain" failed to respond to his informal grievance within the time allowed under Fla. Admin. Code 33-103.011(3)(1).  The Warden responded to Plaintiff's formal grievance on April 1, 2003. Noting that upon inquiry, Chaplains Bright and Hagerman "gave no indication" that Plaintiff filed an informal grievance addressing the call-out list issue, the Warden found that Plaintiff failed to prove an acceptable reason for bypassing

_____

[8]"Due to the Chaplain's violation of 33-103.011(3)(a), failure to respond within the proper time-frame, I bring this formal grievance pursuant to F.A.C. 33-103.017(1): I grieved the Chaplain's discrimination against Muslims on or about March 6, 2003 and, as a result of the submission of that grievance, my name was removed from the Chapel's call-out for Jumu'ah Prayers on Fridays, causing me to be late in my attempt to get a pass for Muslim services.  I've suffered a great deal from this injustice and I seek emergency relief (see 33-103.005(1)) and all other relief allowed by state and federal laws, monetary and injunctive.  Further, I urge the chaplains get [sic[] counseled about violating further while grievances are pending."

The rules governing grievances filed by FDOC prisoners define an "Emergency Grievance" as a "[g]rievance of those matters which, if disposed of according to the regular time frames, would subject the inmate to substantial risk of personal injury or cause other serious and irreparable harm to the inmate." Fla. Admin. C. 33-103.002(4). Emergency grievances, grievances of reprisals, or grievances of a sensitive nature may be filed directly with the Office of the Secretary using the Request for Administrative Remedy or Appeal, Form DC1-303. The following shall apply:

The inmate shall state at the beginning of Part A of Form DC1-303 that the grievance concerns either an emergency, or is a grievance of a reprisal, or a grievance of a sensitive nature.

Fla. Admin. C. 33-103.007(6)(a)(1).  As set forth above, Plaintiff failed to designate this as an "Emergency Grievance," although he did request "emergency relief" in the text of the grievance. The Warden responded in accord with Fla. Admin. C. 33-103.014(f), stating: "Your grievance has been received and thoroughly reviewed. However, it is being returned without action in accordance with FAC Ch. 33-103.014(1)(f). You have failed to attach an informal grievance and its response pertaining to your issue.  You have not explained the reason for bypassing the informal grievance or it is not accepted as being a substantial reason.  If you wish further administrative review, you may submit informal grievance in accordance with FAC CH 33-103.005 to Chaplains Bright or Hagerman, time permitting.  Contact was made with the chaplains and they give no indication that you sent in an informal grievance.  Resubmit your informal to them."

the informal grievance procedure and returned the formal grievance to Plaintiff without action in accordance with Fla. Admin. C. 33-103.014(1)(f).[9]

Rather than correct the deficiency, Plaintiff filed a "Reprisal Complaint" with the Secretary, FDOC, on April 4, 2003, "affirm[ing] and realleg[ing] each and every allegations [sic] contained in the formal grievance" that was formerly submitted to the Warden and rejected because Plaintiff failed to follow FDOC grievance procedures. Plaintiff argued that under Fla. Admin. Code 33-103.005(1), "[a]ttachment of informal grievance attacking an on-going reprisal, as alleged in the attached grievance, is not necessary" (Dkt. 2, Attach. (unnumbered)).[10] In the April 15, 2003 response, the FDOC disagreed. Plaintiff was advised that his grievance appeal was "in non-compliance with Chapter 33-103, Inmate Grievance Procedure, because [he] failed to follow instructions he received at the institutional level before processing [his] appeal." *Id.* Plaintiff was afforded 15 days in which to resubmit his grievance at the institutional level. There is nothing in the record indicating

---

[9]"The informal grievance, formal grievance, grievance filed direct, or grievance appeal, hereafter referred to as "grievance" in this section of the rule may be returned to the inmate without further processing if, following a review of the grievance, one or more of the following conditions are found to exist. The reasons listed below are the only reasons for returning a grievance without a response on the merits. . . . (f) The inmate did not provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable. This evaluation is made on a case by case basis and the reasons for rejecting the complaint will vary with the facts alleged in the complaint. . . . 2) An inmate who has a grievance returned to him for reasons stated in subsection (1) above [excluding paragraph (1)(d), (e), (h), (i), (n), (o), (q), (r) or (s)] may refile utilizing the proper procedure or correct the stated deficiency and refile if upon receipt of this notification the filing is within time frames allowable. When a grievance is returned to an inmate for being improperly filed, the inmate shall be told why the grievance was returned and told that in order for him to receive administrative review of his complaint he must correct the defects and re-submit the grievance within the time frames set forth in Rule 33-103.011, F.A.C., unless instructed otherwise in the grievance response. Instructions to resubmit are not necessary if a grievance is returned for reasons stated in paragraph (1)(d), (e), (h), (i), (n), (o), (q), (r) or (s)." Fla. Admin. C. 33-103.014.

[10]"I reaffirm and reallege each and every allegations contained in the attached formal grievance to Zephyrhills C.I. as if fully set forth herein. Further, I urge that the response erred and is in direct conflict with 33-103.005(l). Attachment of informal grievance attacking an on-going reprisal as alleged in the attached grievance, is not necessary according to the said F.A.C. rule. I request immediate relief from said violations. Further, I request due to the violators' constant violation of inmates' rights that they are terminated from their position, or, in the alternative, suspended pending an investigation on these issues. Then, grant any and all relief as may be deemed just and proper according to state and/or federal constitution."

that Plaintiff availed himself of this opportunity to properly exhaust his retaliation claim, and no reference was made to the issues raised therein or in the "Discrimination Grievance" filed on March 14, 2003.

Citing *Lane v. Moore*, 765 So. 2d 777 (Fla. 1st DCA 2000), Plaintiff has attached a "Peremptory Statement" to his complaint contending that he is entitled to seek judicial remedies in this Court pursuant to Fla. Admin. C. 33-103.011(3) and (4)[11] without further efforts to exhaust his claims because he filed a "formal grievance" with the attached response from the Institution's Superintendent's formal grievance, however no response was made as of . . . April 29, 2003." Plaintiff failed to provide a copy of the grievance he

---

[11] The rules governing the FDOC's grievance procedures provide, in pertinent part, as follows:

(3) Responding to Grievances.

  (a) Informal Grievances -- Within 10 calendar days following receipt of an informal grievance by the staff member, a written response shall be provided to the inmate. See Rule 33-103.005, F.A.C.

  (b) Formal Grievances -- The reviewing authority as defined in paragraphs 33-103.002(15)(a) through (d), F.A.C., shall have up to 20 calendar days from the date of receipt of the grievance to take action and respond. See Rule 33-103.006, F.A.C.

  (c) Grievance Appeals and Direct Grievances to the Office of the Secretary -- Shall be responded to within 30 calendar days from the date of the receipt of the grievance. See Rule 33-103.007, F.A.C.

  (d) Emergency Grievances -- Shall be responded to within 15 calendar days of receipt pursuant to paragraphs 33-103.006(3)(a) and 33-103.007(6)(b), F.A.C.

(4) The time limit for responding to grievances and appeals may be extended for a reasonable period agreeable to both parties if the extension is agreed to in writing by the inmate. Unless the grievant has agreed in writing to an extension, expiration of a time limit at any step in the process shall entitle the complainant to proceed to the next step of the grievance process. If this occurs, the complainant must clearly indicate this fact when filing at the next step. If the inmate does not agree to an extension of time at the central office level of review, he shall be entitled to proceed with judicial remedies as he would have exhausted his administrative remedies. The Bureau of Inmate Grievance Appeals will nevertheless ensure that the grievance is investigated and responded to even though an extension has not been agreed to by the inmate.

Fla. Admin. C. 33-103.011(3)-(4).

allegedly filed on March 19, 2003, or provide any information regarding the complaint presented therein.

Reading Plaintiff's *pro se* allegations in a liberal fashion, *see Haines v. Kerner*, 404 U.S. 519 (1972), and comparing the claims raised in the complaint with the claims raised in Plaintiff's administrative grievances, it is clear that Plaintiff failed to properly exhaust any of his claims.

A *pro se* plaintiff is not required to prove his claim in his complaint, but he must allege sufficient facts which, when viewed in the light most favorable to the plaintiff, support the conclusion that he may be able to establish that he is entitled to the relief he seeks under § 1983.  Plaintiff has failed to meet this burden.  While pleadings drafted by laymen are to be interpreted by application of less rigid standards than those applied to formal documents prepared by lawyers, *see Tannenbaum v. United States*, 148 F.3d 1262(11th Cir. 1998), this leniency does not give a court license to serve as *de facto* counsel for a *pro se* litigant, *see Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), "or to rewrite an otherwise deficient pleading in order to sustain an action," *GJR Investments, Inc. v. County of Escambia, Florida*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citation omitted).

### Conclusion

It is clear that Plaintiff did not exhaust his claims. *See* 42 U.S.C. § § 1997e(a).  Thus, Defendants' motion to dismiss the complaint for failure to state a claim should be granted.  The Court cannot proceed with a cause of action under § 1983 where recovery is barred by statute.  However, as the Eleventh Circuit held in *Harris*, §1997e applies only to claims filed while an inmate is confined.  *Harris v. Garner*, 190 F.3d 1279 (11th Cir. 1999), *vacated by*, 197 F.3d 1059 (11th Cir. 1999)*, and reinstated in relevant part by*, 216 F.3d 970, 979-80 (11th Cir. 2000). Dismissal of the complaint will, therefore, be without prejudice. Having

determined that Defendants' assertion that the complaint is subject to dismissal for failure to exhaust administrative remedies is well taken, it is unnecessary to address Defendants' other grounds for relief presented in the motion to dismiss.

**ACCORDINGLY**, the Court **ORDERS** that:

1.  Defendants' Motion to Dismiss is **GRANTED** (Dkt. 35).

2.  Plaintiff's civil rights complaint is **DISMISSED**, without prejudice, for failure to state a claim for which the Court can grant relief (Dkt. 1).

3.  The **Clerk** of Court shall enter judgment for Defendants, terminate all pending motions, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on June 4, 2007.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Pro Se Plaintiff/Counsel of Record
SA:jsa